UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KENNETH GRAY, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 4:09-CV-1355 RWS |
| | ) |
| JEFF NORMAN,[1] | ) |
| | ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

This matter is before me on Petitioner Kenneth Gray's Petition for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. [Doc. 1]. Respondent Jeff Norman filed a Response. [Doc. 16]. Petitioner filed a Reply in support of his Petition. [Doc. 19]. For the reasons set forth below, Gray's petition for a writ of habeas corpus will be denied.

**I.   Background**

Gray was convicted of shooting his neighbor R.W. "Dub" Cooley, after Mr. Cooley interrupted Gray burglarizing Cooley's home. At the time of the crimes, Gray was sixteen years old. The Juvenile Court certified Gray to be tried as an adult. (Resp't Ex. D at 15-16.) Gray was charged with Murder in the First Degree, Armed Criminal Action, and Burglary in the First Degree. Gray's case was tried before a judge on stipulated facts as the result of an agreement with the prosecutor to reduce the murder charge from first to second degree. (Resp't Ex. D at 42-44.) The state court sentenced Gray to two sentences of life imprisonment for Murder in the Second Degree and Armed Criminal Action to run consecutively, and fifteen years for Burglary in the First Degree to run concurrently to the other convictions. (Resp't. Ex. D at 57-58.) The Missouri Court of Appeals

---

[1] Respondent Jeff Norman was substituted for David Dormire in this action pursuant to Fed. R. Civ. P 25(d) and Rule 13 of the Rules Governing § 2254 cases. [Doc. 33].

affirmed Gray's convictions on direct appeal.  State v. Gray, 100 S.W.3d 881 (2003).  Gray subsequently filed a motion for post-conviction relief, pursuant to Mo. Sup. Ct. R. 29.15, which the motion court denied.  (Resp't. Ex. K at 26-41.)  The Missouri Court of Appeals affirmed the motion court's denial of Gray's Rule 29.15 post-conviction motion.  (Resp't. Ex. P.)

In his petition for a writ of habeas corpus, Gray raises three grounds for relief.  First, Gray asserts that the trial court erred in denying his motion to suppress his confession to the police, because the confession was not intelligently or voluntarily given.  Second, Gray alleges that he received ineffective assistance of counsel during his direct appeal, because his attorneys at the trial and appellate levels did not challenge the trial court's decision not to remand Gray's case to the juvenile court.  Finally, Gray alleges that he received ineffective assistance of counsel during his post-conviction appeal, because his counsel did not present evidence that a third-party, Gray's stepfather, actually killed Mr. Cooley.

**II.    Standard of Review**

The Anti-Terrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA") applies to all petitions for habeas relief filed by state prisoners after this statute's effective date of April 24, 1996.  Lindh v. Murphy, 521 U.S. 320, 326-29 (1997).  In conducting habeas review pursuant to § 2254, a federal court is limited to deciding whether a claim that was adjudicated on the merits in state court proceedings (1) resulted in a decision that is "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court," or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceedings."  28 U.S.C. § 2254(d)(1)-(d)(2) (1996).

For purposes of § 2254(d)(1), "'[f]ederal law, as determined by the Supreme Court,' refers to

'the holdings, as opposed to the dicta, of [the Supreme] Court's decisions.'" Evenstad v. Carlson, 470 F.3d 777, 782-83 (8th Cir. 2006) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)).  To obtain habeas relief, a habeas petitioner must be able to point to the Supreme Court precedent which he thinks the state courts acted contrary to or applied unreasonably.  Id. at 783 (citing Buchheit v. Norris, 459 F.3d 849, 853 (8th Cir. 2006)).

A state court's decision is contrary to clearly established Supreme Court precedent "if the state court either applies a rule that contradicts the governing law set forth in [Supreme Court] cases or confronts a set of facts that are materially indistinguishable from a decision of [the] Court and nevertheless arrives at a result different from [the] precedent."  Penry v. Johnson, 532 U.S. 782, 792 (2001).  A state court decision is an unreasonable application of clearly established Supreme Court precedent, "if it correctly identifies the governing legal rule but applies it unreasonably to the facts of a particular prisoner's case."  Id.  "Even if the federal habeas court concludes that the state court decision applied clearly established federal law incorrectly, relief is appropriate only if that application is also objectively unreasonable."  Evenstad, 470 F.3d at 782.  "A state court decision involves an unreasonable determination of the facts in light of the evidence presented in the state court proceedings, 28 U.S.C. § 2254(d)(2), only if it is shown that the state court's presumptively correct factual findings do not enjoy support in the record."  Id.

**III.    Discussion**

    **A.    Ground 1: The State Court Erred in Admission of Gray's Confession**

Gray claims the state court violated his constitutional rights by admitting his confession into evidence.  Gray asserts that his confession was erroneously admitted for the following reasons: (1) he did not understand or intelligently waive his rights to make a statement, because he was only

-3-

sixteen years old; (2) he was taking Prozac and other medications for depression, anxiety, and attention deficit disorder; (3) he had an IQ of 73; (4) he was not informed that his mother was willing to help him; (5) he perceived himself as being assaulted; (6) the investigation lasted into the early hours of the morning and involved three different officers after Gray was taken in on a search warrant; (7) then being interrogated without being advised that he was free to leave; (8) he had sleeping difficulties; and (9) juvenile officials merely recited Gray's rights without ensuring that he knew them.  Respondent asserts that Gray's claims lack merit.

### 1. Law Regarding Confessions of Minors

"By its very nature, custodial interrogation entails 'inherently compelling pressures.'" J.D.B. v. North Carolina, 131 S.Ct. 2394, 2401 (2011) (citing Miranda v. Arizona, 384 U.S. 436, 467 (1966)).

> Even for an adult, the physical and psychological isolation of custodial interrogation can undermine the individual's will to resist and compel him to speak where he would not otherwise do so freely.  Indeed, the pressure of custodial interrogation is so immense that it can induce a frighteningly high percentage of people to confess crimes they never committed.  That risk is all the more troubling when the subject of custodial interrogation is a juvenile.

Id.

In Miranda, the United States Supreme Court provided "concrete constitutional guidelines" for law enforcement agencies and courts that the admissibility in evidence of statements given during a custodial interrogation was dependent upon whether the police provided the suspect with the following four warnings:  (1) right to remain silent; (2) anything suspect says can be used against him in a court of law; (3) right to have an attorney present; and (4) if the suspect cannot afford an attorney, one will be appointed for him prior to questioning.  Dickerson v. United States, 530 U.S.

428, 435 (2000). A suspect may waive his Miranda rights, "provided the waiver is made voluntarily, knowingly, and intelligently." Miranda, 384 U.S. at 444.

Determination of whether a person has waived Miranda rights consists of "two distinct dimensions." Moran v. Burbine, 475 U.S. 412, 421 (1986).

> First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception. Second, the waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it. Only if the totality of the circumstances surrounding the interrogation reveal both an uncoerced choice and the requisite level of comprehension may a court properly conclude that the Miranda rights have been waived.

Moran, 475 at 421.

"The totality of the circumstances approach is adequate to determine whether there has been a waiver even where interrogation of juveniles is involved." Fare v. Michael, 442 U.S. 707, 725 (1979). "The totality approach permits-indeed, it mandates- inquiry into all the circumstances surrounding interrogation." Id. "This includes evaluation of the juvenile's age, experience, education, background, and intelligence and whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." Id. "The question of whether a defendant understood the Miranda warnings is a question of fact, but the ultimate question of whether a waiver was valid is a question of law." Bell v. Norris, 586 F.3d 624, 631 (8th Cir. 2009).

### 2. Factual Findings by State Court Regarding Gray's Confession[2]

---

[2] A determination of a factual issue by a State court shall be presumed correct, unless the Petitioner rebuts the presumption by clear and convincing evidence. 2 U.S.C. § 2254(e)(1). The state court

At the time of Mr. Cooley's murder on October 27, 1999, Gray lived with his mother and stepfather ("the Carrolls").  After Mr. Cooley's body was found, the police communicated with Mr. Cooley's neighbors including the Carrolls and Gray.  At around 10:00 p.m. that night, Officers Jarrett Bullock of the Dunklin County Sheriff's Department and Ronald King of the Malden Police Department spoke to Gray from their patrol car parked in front of Gray's home.  During this conversation with the officers, Gray told them that he had been around Mr. Cooley's home between 10:00 a.m. and 12:00 p.m. that day; that he had walked around the house and teased Mr. Cooley's dogs; but did not see or speak with Mr. Cooley.  Gray ended the conversation by telling the officers "I think this interview is over" and stopped speaking to the officers.  The officers then spoke briefly with Gray's mother, Mrs. Carroll, who told them that Gray came home between noon and 1:00 p.m. that day.

At 11:45 p.m. Corporal Jodi Laramore, of the Missouri Highway Patrol, went to the Carrolls' home and asked Gray and his mother to go with him to the sheriff's office to talk about Mr. Cooley's murder.  Deputy Juvenile Officer Thomas Campbell and another sheriff's deputy came to the Carrolls' home with Corporal Laramore.  Gray and his mother agreed to go to the sheriff's department with the officers.  Gray rode with Laramore and Campbell in Laramore's car.  Gray's mother rode with the other sheriff's deputy in a separate car.  The explanation for Gray and his mother riding in separate cars was that Laramore's car only had room for three people, because he had a lot of things in the back seat.

At the sheriff's office, Gray was placed in a room with Laramore and Campbell.  His mother was placed in another room.  Laramore told Gray that he was not under arrest and could leave at any time.  Gray responded that he did not have anything to hide.  Campbell then gave Gray the

"juvenile" Miranda warning for a felony offense. Campbell read the warning to Gray line by line to make sure he understood what he was reading. Then Campbell asked Gray if he wanted his mother present. Gray stated he did not want his mother there, he understood his rights, and wanted to make a statement. Gray signed the "juvenile" Miranda form shortly after midnight on October 28, 1999. (Resp't Ex. E. at 29.) Laramore then questioned Gray until 12:55 a.m. Campbell was present while Laramore questioned Gray, but not ask any questions. Laramore noticed and photographed Gray's left palm and right index finger. At 12:55 a.m., Gray told Campbell he would not answer any more questions without his mother being present. Campbell then brought Gray's mother into the room. After Gray's mother arrived, Sergeant Dennis Rainey of the Missouri Highway Patrol questioned Gray in the presence of Campbell and Gray's mother. Sgt. Rainey asked Gray to submit to a gunshot residue test, but Gray refused.[3] Rainey questioned Gray until 2:30 a.m. The officers then returned Gray and his mother to their home.

      At 11:00 a.m., the next day, Sgt. Rainey and Deputy Bullock returned to the Carroll home with search warrants that allowed for the taking of samples of Gray's hair, blood, and fingernail scrapings. The warrants were served on Gray and his mother. Gray was then placed in a police car. Gray's mother asked where they were taking Gray and one of the officers said, "We're taking him to the hospital and we'll bring him right back." Sgt. Rainey and Deputy Bullock took Gray to the sheriff's office and retrieved the hair and fingernail samples from him. They then drove him to the hospital. During the drive to the hospital, Gray stated that he had accidentally broken a window out of Mr. Cooley's residence. Sgt. Rainey responded that they could discuss it later after they had gotten the blood sample. After the blood sample was taken, Rainey and Bullock took Gray to the

---

[3] The gunshot residue test was eventually made without Gray's consent, but the trial court suppressed the results of the test.

highway patrol office. Juvenile officers Jim Pemberton and Campbell were present at the office. Pemberton then gave Gray a complete juvenile Miranda warning at approximately 2:30 p.m. Pemberton read each individual warning statement and asked Gray if he understood the statements. (Resp't Ex. E at 97.) When Gray indicated that he understood, Pemberton placed a check mark next to the warning statements. Id. Gray signed the juvenile Miranda warning form. Id. Gray did not request counsel or ask for a parent. Gray did ask to speak with Rainey alone. Rainey explained that he could not meet with Gray alone, because a juvenile officer had to be present. Bullock and Campbell then left the interview room. Rainey and Campbell stayed in the room with Gray. Rainey began questioning Gray, with Pemberton present, but Pemberton did not ask any questions. During the questioning with Rainey, Gray told Rainey that he broke Mr. Cooley's window earlier in the week while throwing a stick and playing fetch with Mr. Cooley's dog. Gray stated that he may have cut his hand while picking up glass from the broken window. Rainey concluded his questioning of Gray between 3:30 and 4:00 p.m. At 5:15 p.m., another officer Sergeant Rick Sanders came into the interview room with Pemberton present. Sanders began to read the reports from Gray's previous interviews and he noticed that Gray became increasingly nervous. Gray at one point states, "I was scared." When Sanders asked what he meant, Gray confessed to breaking Mr. Cooley's window with a brick, entering the home with a handgun, and then shooting Mr. Cooley when Mr. Cooley unexpectedly returned home and caught him. Next, Gray agreed to have his statement videotaped. Then, Pemberton gave Gray another juvenile Miranda warning. After Gray acknowledged he understood his rights and wanted to give a statement, he signed the waiver form, and Gray confessed on videotape.

### 3.   State Court's Application of Supreme Court Precedent

In this case, the state courts correctly identified the governing legal standard regarding a juvenile's waiver of Miranda rights as the totality of circumstances test.  Gray, 100 S.W.3d at 886; (Resp't Ex. D at 53.)  The trial court found that in consideration of Gray's age, background, experience, conduct, capacity to understand, physical and mental health, including prescribed medications and the totality of circumstances, Gray's statements to the police were freely and voluntarily made.[4]  (Resp't Ex. D at 53.)   The appellate court also addressed and considered several factors in evaluating Gray's waiver of his Miranda rights, including the "accused's psychological age, . . . previous court experience, education level, intelligence ranking, and unusual susceptibility to coercion.[5]  Gray, 100 S.W.3d at 886.

Next, I must examine whether the state court's application of the totality of the circumstances test was objectively reasonable.  As an initial matter, Gray acknowledged that the State made a prima facie case regarding the voluntariness of his confession.  Nevertheless, Gray still asserted that based on the totality of his circumstances, the confession should have been suppressed.  The appellate court addressed each contention as follows.

First, Gray claims his confession should be suppressed, because he was only sixteen years old.  The state court correctly noted that age is only one of the factors considered when

---

[4] The trial court did not specifically cite any case law in its Order, however, citation to Supreme Court cases is not required "so long as neither the reasoning nor the result of the state court decision contradicts them." Early v. Packer, 537 U.S. 3, 8 (2002).

[5] Gray requested that I consider his case in light of the Supreme Court's recent decision in J.D.B. v. North Carolina, 131 S.Ct. 2394 (2011).  The holding in J.D.B. does not affect the analysis in this matter, as the state courts considered Gray's age when determining if his confession was made voluntarily, knowingly, and intelligently.  The holding in J.D.B. held that a juvenile's age should be considered in determining whether a juvenile would feel he was "in custody" for purposes of Miranda.

voluntariness of a juvenile confession is challenged. Gray, 100 S.W.3d at 886-87. As noted above, the assessment would include evaluation of the "juvenile's age, experience, education, background, and intelligence and whether he has the capacity to understand the warnings given him, the nature of his Fifth Amendment rights, and the consequences of waiving those rights." As a result, the state court determined Gray's age alone is insufficient to support his claim that his confession was not made voluntarily or intelligently.

Second, Gray claims that his confession should not have been admitted because he was taking medications for depression, anxiety, and attention deficit disorder. The state court found that the evidentiary record refuted Gray's claims that his medications affected the voluntariness of his confession. The court noted that the evidence showed that the medications aided Gray in making an "intelligent, understanding, and voluntary waiver of his constitutional rights." Gray, 100 S.W.3d at 889. This is supported in the record by statements made by Gray and Gray's mother. At the time of his confession, Gray was taking Klonopin and Prozac. Gray told his doctor that the Klonopin helped his nerves and his mother testified that the Prozac helped Gray with panic attacks, sleep problems, and anxiety. Id. at 888-89; (Resp't Ex. F at 74.) The state court noted that Gray did not present any evidence that he was experiencing any negative side effects from any medication while he was being interrogated. As a result, the state court found that Gray's medication use could not support suppression of his confession.

Third, Gray argues his confession should not have been admitted due to his IQ score of 73. The state court acknowledged that Gray's aptitude tests demonstrated low scores. The state court, however, also found that low IQ scores "do not necessarily render a confession inadmissible." Gray, 100 S.W.3d at 888. The court noted that the medical evidence showed that Gray's verbal IQ tests

were higher than his overall borderline IQ score and that a consulting doctor found that Gray's "reading ability and overt presentation would suggest that his actual intellectual potential is higher." Id.  Further, the state court noted that Gray's "initial efforts to explain away [his blood] at [the victim'] house, his [unsolicited] assertion of his rights on separate occasions, and his overt performance during the videotaped confession does not bespeak a person of such dull intellect that he was somehow incapable of understanding his rights." Id.

Fourth, Gray argues his confession should be suppressed, because he was not informed that his mother was willing to help him.  The state court found that based on the circumstances, Gray's claim "rings hollow." Gray, 100 S.W.3d at 889.  The state court noted that prior to and between each Mirandized interrogation, Gray had ample time to confer with his mother, including when he requested that she join him the interrogation room during his first visit to the police station on October 28, 1999 and during the nine hour period after Gray returned home prior to service of the search warrant. Id.  The state court noted that Gray's mother knew each time that officers spoke with Gray and she was present when he requested her presence. Id.

Fifth, Gray alleges his confession should not have been admitted, because although he was not physically threatened, he perceived himself as being assaulted.  The state court found that the evidence as stated previously, refutes Gray's argument that his intellect, psychological problems, or mediation prevented his knowing and intelligent waiver of his Miranda rights. Gray, 100 S.W.3d at 889.  The state court also found that Gray's assault argument is fundamentally flawed because

> [i]f an intentional and truthful statement must be deemed to be involuntary, merely by reason of imaginary dangers conjured up by an apprehensive suspect, a greater burden would be placed on law enforcement than any which judicial solicitude for persons charged with crimes has hitherto created.  There would be no objective standards for determining voluntariness, and no limit but the

> ingenuity of the defendant to the grounds for invalidity of confessions.

Gray, 100 S.W.3d at 889-90.

Next, Gray argues his confession should have been suppressed, because he was subjected to a lengthy interrogation, that he was not free to leave, and had sleeping difficulties. The state court found that at his suppression hearing, Gray did not claim that the length of the interrogation or procedure used caused him to be tired, sleepy, or to succumb to the interrogator's pressure. Gray, 100 S.W.3d at 890. The state court noted that Gray only stated that he was scared, nervous, and panicked during the questioning. Id. Moreover, the state court found that the interrogations by the officers were one-on-one with only the juvenile officer being present. Id.

Finally, Gray claims his confession should be suppressed because the juvenile officers merely recited Gray's rights without ensuring that he knew them. The state court found that Gray's claim was directly contradicted by the record. Gray, 100 S.W.3d at 890. The state court noted that juvenile officers were present during the interrogations, gave Gray Miranda warnings, asked if he understood his rights, and Gray always answered affirmatively. The state court found that the juvenile officers' conduct supports the finding that Gray's statements were given voluntarily and knowingly.

Based upon my careful review of the facts in this action, the state court record, and Gray's Petition, I find that Gray has failed to present sufficient evidence to overcome the presumption of correctness attached to the state court's factual determination that he understood the Miranda warnings and voluntarily waived those rights. See Bell, 586 F.3d at 631. The state courts' application of the totality of the circumstances test is consistent with Fare and the application of the test was applied in an objectively reasonable manner. As a result, Gray's first ground is without

merit.

    **B.**    **Ground Two: Ineffective Assistance of Counsel**

In his second argument, Gray asserts that he received ineffective assistance from appellate counsel during the direct appeal of his case because his attorney failed to argue that the trial court erred in denying Gray's motion to remand his case to juvenile court. Respondent asserts that Gray's claims of ineffective assistance of counsel regarding Ground 2 lack merit and should be denied.

    **1.**    **Standard for Ineffective Assistance of Counsel**

To obtain relief based on ineffective assistance of trial counsel, a petitioner must establish (1) that trial counsel's performance fell below an objective standard of reasonableness and (2) that this deficient performance prejudiced the Petitioner's defense. <u>Strickland v. Washington</u>, 466 U.S. 668, 687-88 (1984).

The "performance" component of <u>Strickland</u> requires a showing that "counsel's representation fell below an objective standard of reasonableness." <u>Id.</u> at 688. To satisfy this prong, a petitioner must first identify the specific acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment. <u>Id.</u> The court must then make a determination of whether, "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." <u>Id.</u> In making this determination, the court should recognize that trial counsel is "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." <u>Id.</u> at 690.

To satisfy the "prejudice" component of Strickland, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland</u>, 466 U.S. at 694. In determining whether sufficient

prejudice exists, "a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury. Id. at 695. Further, the court "should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge and jury acted according to law." Id. at 694.

Finally, a court reviewing an ineffective assistance of counsel claim is not required to address both the prejudice and performance components of the Strickland inquiry if a petitioner makes an insufficient showing on one component. Id. at 697. "A court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the respondent as a result of the alleged deficiencies." Id. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Id.

The Strickland test is applicable to appellate counsel. Smith v. Robbins, 528 U.S. 259, 289 (2000). "When appellate counsel competently asserts some claims on a defendant's behalf it is difficult to sustain a[n] ineffective assistance claim based on allegations that counsel was deficient for failing to assert some other claims." Link v. Luebbers, 469 F.3d 1197, 1205 (8th Cir. 2006). "Because one of appellate counsel's important duties is to focus on those arguments that are most likely to succeed, counsel will not be held to be ineffective for failure to raise every conceivable issue." Id. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Id. "[A]ppellate counsel who file a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." Robbins, 528 U.S. at 288.

Gray asserts that his appellate counsel on direct appeal failed to assert that the trial court erred in denying Gray's motion to dismiss the criminal information against him and remand the case

to juvenile court, which constituted ineffective assistance of counsel.  Gray's case began in juvenile court, because Gray was sixteen at the time of the crime.  The prosecutor then filed a Motion to Dismiss the Petition against Gray in juvenile court to allow Gray to be prosecuted as an adult in circuit court.  After a certification hearing, the juvenile court granted the government's motion and Gray was then charged under the general law.  (Resp't Ex. D at 14-16, Resp't Ex. O.)   After charges were filed against him in the circuit court, Gray filed a motion to dismiss and remand to the juvenile court.  (Resp't Ex. D. at 10-13.)  The motion to dismiss and remand was denied.  (Resp't Ex. E at 3.)  On direct appeal, Gray did not appeal the trial court's denial of his motion to dismiss and remand.  Gray asserts that he was prejudiced by his appellate counsel's failure to present the issue on direct appeal, because a reasonable probability existed that the appellate court would have reversed his convictions and remanded the case to juvenile court.  Gray asserted this issue in his initial post-conviction Rule 29.15 motion.  (Resp't Ex. K at 4-18.)   The trial court held an evidentiary hearing on Gray's Rule 29.15 motion.  (Resp't Ex. N.)  At the hearing, Gray and his trial counsel testified.  (Resp't Ex. N.)  Gray's appellate counsel on direct appeal did not testify.  (Resp't Ex. N.)  The trial court denied Gray's Rule 29.15 motion.  (Resp't Ex. K at 26-41.)  Gray filed an appeal, which was also denied.  (Resp't Ex. P.)

The Missouri Court of Appeals found that Gray did not establish ineffective assistance of counsel.  The appellate court determined that Gray failed to meet his burden of proving by a preponderance of the evidence that his appellate counsel provided ineffective assistance.  (Resp't Ex. P at 7.)  The appellate court noted that Gray's counsel was not obligated to assert every possible issue.  Id.  Further, the appellate court noted that Gray proved nothing at the evidentiary hearing except that appellate counsel failed to assert a possible point of error on direct appeal.  Id.  Because

Gray's appellate counsel did not testify and Gray presented no other evidence that the decision not to raise the issue fell outside the range of professionally competent assistance, the appellate court found that Gray abandoned his claim. Id. at 7-8.

I find that Gray has failed to satisfy either prong of the Strickland test. First, Gray cannot overcome the presumption of the effective assistance of counsel, because he has not demonstrated that the alleged error regarding a failure to appeal the denial of his motion to dismiss and remand, was stronger than the issue asserted on appeal. Link, 469 F.3d at 1205. Second, Gray cannot establish prejudice, because it is unlikely the Missouri courts would have overturned his conviction on this basis. The Missouri Court of Appeals considered the ineffective assistance of counsel claim and affirmed the trial court's denial of Gray's claim. (Resp't Ex. P. at 7-8.) The appellate court specifically stated that Gray's claim was "not supported by evidence at the evidentiary hearing." Id. at 8. Because Petitioner cannot show that his appellate counsel's performance fell below an objective standard of reasonableness and that he was prejudiced by it, he cannot demonstrate ineffective assistance of counsel. As a result, Ground Two of Gray's Petition lacks merit and is denied.

### C. Ground Three: Ineffective Assistance of Post-Conviction Counsel

Finally, Gray asserts that counsel who represented him at his post-conviction appellate motion was ineffective, because his post-conviction appellate counsel failed to raise the issue of trial counsel's ineffectiveness for failing to present evidence that Gray's stepfather actually murdered Mr. Cooley or that Gray was actually innocent. Respondent argues that Gray's claim is unreviewable and should be denied.

"Ordinarily a federal court reviewing a state conviction in a [§ 2254] proceeding may

consider only those claims which the petitioner has presented to the state court in accordance with state procedural rules." Arnold v. Dormire, 675 F.3d 1082, 1086 (8th Cir. 2012). "In Missouri, a claim must be presented at each step to avoid default." Id. at 1087 (citing Jolly v. Gammon, 28 F.3d 51, 53 (8th Cir. 1994)) (internal quotations omitted). "A state prisoner who defaults on his federal claims in state court because of a state procedural rule is barred from federal habeas review unless the prisoner can show cause and prejudice." Id. "Cause is something external to the petitioner, something that cannot fairly be attributed to him." Id.

"There is no federal constitutional right to the effective assistance of post-conviction counsel." Clay v. Bowersox, 367 F.3d 993, 1005 (8th Cir. 2004) (citing Coleman v. Thompson, 501 U.S. 722, 752 (1991)); see also 28 U.S.C. § 2254(i) ("The ineffectiveness or incompetence of counsel during Federal or State collateral proceedings shall not be a ground for relief in a proceeding arising under section 2254"). Recently, the United States Supreme Court issued a ruling creating a limited exception to this rule. In Martinez v. Ryan, the Supreme Court held:

> Where under state law, claims of ineffective assistance of trial
> counsel must be raised in an initial-review collateral proceeding, a
> procedural default will not bar a federal habeas court from hearing
> a substantial claim of ineffective assistance at trial, if in the initial
> review collateral proceeding, there was no counsel or counsel in
> that proceeding was ineffective.

Martinez, 132 S.Ct. 1309, 1320 (2012). Missouri law does not allow claims for ineffective assistance of counsel to be raised on direct appeal. State v. Wheat, 775 S.W.2d 155, 157 (Mo. 1989) (overruled on other grounds by Joy v. Morrison, 254 S.W.3d 885 (Mo. banc. 2008)). The United States Court of Appeals for the Eighth Circuit has held that Martinez does not stand for the proposition that the failure to preserve claims on appeal from a post-conviction proceeding can

constitute cause. Arnold, 675 F.3d at 1087 (citing Martinez, 132 S.Ct. at 1320) (holding Martinez does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings).

In this case, Gray's initial post-conviction motion pursuant to Rule 29.15 asserted several claims for ineffective assistance of trial counsel, including that trial counsel was ineffective for not investigating or exploring the possibility of other suspects and Gray's actual innocence. (Resp't Ex. K at 8, 29.) The motion court denied Gray's Rule 29.15 motion. (Resp't. Ex. K at 26-41.) Gray's appeal of the denial of his Rule 29.15 motion only alleged one error. (Resp't Ex. I.) In the appeal, Gray alleged that the motion court erred because Gray was denied ineffective assistance of appellate counsel on direct appeal when appellate counsel failed to assert on direct appeal that the trial court erred in denying Gray's motion to dismiss the information in Circuit Court and remand his case to juvenile court. (Resp't Ex. I at 18.)

Gray raised multiple ineffective assistance of counsel claims in his initial post-conviction proceeding, but only raised one of those claims in his appeal. Gray now seeks relief under § 2254 for the post-conviction appellate counsel's failure to raise an additional claim in his post-conviction appeal. (Resp't Ex. I). Under Martinez and Arnold, Gray cannot bring a claim of ineffective assistance of post-conviction counsel regarding appeals from initial review collateral proceedings. Martinez, 132 S.Ct. at 1320; Arnold, 675 F.3d at 1087. As a result, Ground Three of Gray's Petition is denied.

**IV.    Conclusion**

Based on the foregoing, Gray's request for relief pursuant to 28 U.S.C. § 2254 is denied. Further, because Gray has made no showing of a denial of a constitutional right, I will not issue a

certificate of appealability. See 28 U.S.C. § 2253(c)(2); Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

Accordingly,

**IT IS HEREBY ORDERED** that Petitioner's Writ for Habeas Corpus pursuant to 28 U.S.C. § 2254 is **DENIED**. [Doc. 1].

**IT IS FURTHER ORDERED** that the Court will not issue a certificate of appealability. A separate judgment in accordance with this Memorandum and Order is entered this same date.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 19th day of September, 2012.